```
                 UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE
```

Oliver Hooper

    v.                                          Civil No. 08-cv-426-JD
                                                    Opinion No. 2010 DNH 051

Warden, Northern New Hampshire
Correctional Facility


## O R D E R

Oliver Hooper seeks habeas corpus relief, pursuant to 28 U.S.C. § 2254, from his state convictions and sentences for aggravated felonious sexual assault, simple assault, criminal threatening, sexual assault, and kidnaping.  In support of his petition, Hooper raises claims that the state court's evidentiary rulings violated his rights under the Fifth and Sixth Amendments, along with violations of the New Hampshire Constitution and state law, that he was not afforded the presumption of innocence, and that he was not tried under the proper standard of proof.  The Warden moves for summary judgment, and Hooper objects.


## Standard of Review

Summary judgment is commonly used in habeas corpus proceedings to determine whether the issues raised may be decided based on the record, within the procedural confines of § 2254.

See Fed. R. Civ. P. 81(a)(4); Rule 12, Rules Governing § 2254 Proceedings.  Ordinarily, summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## Background

For purposes of summary judgment, the Warden provides factual background supported by citations to the trial transcript.  Hooper does not challenge the factual background provided by the Warden.  Therefore, the properly supported factual background provided by the Warden is deemed admitted.  LR 7.2(b)(2).

In July of 2005, Hooper worked as a salesman of heating and plumbing supplies in a sales area located in southern Maine.  On the morning of July 26, 2005, Hooper was driving in a

neighborhood of Dover, New Hampshire, where he stopped at a house with a for sale sign. When the homeowner, John Crosier, answered the door, Hooper explained that he was considering moving to Dover and left. Hooper then went to a second house with a for sale sign where Cathy Ann Petit answered the door, accompanied by her daughter. When Mrs. Petit explained to Hooper that she could not show him the second floor of the house because her second daughter was asleep there, Hooper left.

Hooper then went to a third house with a for sale sign. A woman, RG, answered the door and told him to contact the realtor.[1] When Hooper said that he would rather speak with the homeowner, RG wrote her name, her mother's name, and a telephone number on a piece of paper for him. Hooper grabbed RG by the arm, pushed her back into the house, and eventually forced her upstairs. Once in a bedroom, Hooper tied up RG, took her clothes and his own clothes off, threatened her with a knife, and forced her to perform oral sex. Hooper then also raped RG vaginally but told her that because she was not using birth control, he would not ejaculate. He forced RG to take a shower, and then forced her down to the basement where he left her naked and bound.

---

[1] The court uses the victim's initials, rather than her full name, to protect her privacy.

After he left, RG managed to get upstairs where she called her mother and the police.

Hooper was charged with five counts of aggravated felonious sexual assault, two counts of simple assault, two counts of criminal threatening, one count of sexual assault, and one count of kidnaping.  Before trial, Hooper moved to suppress evidence found during a search of his home in Gorham, Maine, arguing that the search, which was conducted at night, exceeded the scope of the "daytime warrant" that expired at 9 p.m.  The superior court held an evidentiary hearing and denied the motion, concluding that although the search continued after 9 p.m., it did not exceed the scope of the warrant because it began before 9 p.m.

The prosecution moved in limine to be permitted to introduce evidence pertaining to Hooper's stops at other houses with for sale signs in the yards before he reached the victim's home.  The prosecution represented that the evidence of Hooper's other stops was relevant to show his identity and to show his mode of operation.  The court allowed the evidence.

At trial, the prosecution called three witnesses to testify about the results of the sexual assault kit administered to RG after the assault.  Sara Taylor, the nurse who administered the sexual assault kit; Mary Dawson, a criminalist with the state police forensic laboratory who processed the assault kit, and

Jennifer Pierce-Weeks, the director of the Sexual Assault Nurse Examiner Program, testified about the results of RG's examination and testing.

Pierce-Weeks testified that examination and testing showed an absence of Hooper's DNA in the victim's mouth and vagina and no trauma to her vagina. The defense objected that the prosecution failed to give timely notice of Pierce-Weeks's expert opinion testimony and that the prosecution was eliciting testimony beyond the scope of Pierce-Weeks's expert report. The defense also argued that the prosecution's questioning and Pierce-Weeks's testimony opened the door to ask Pierce-Weeks about evidence that semen from someone other than Hooper was found through the testing. The court did not allow questioning about the other semen found through testing the rape kit.

Hooper was convicted on all of the charges against him. He was sentenced to not less than ten nor more than twenty years on each of the five aggravated felonious sexual assault convictions, to be served consecutively, and consecutive sentences of three and a half to seven years on the remaining convictions. He filed an appeal in which he raised four issues: (1) did the exclusion of evidence of another man's semen found in the rape kit violate Hooper's rights to due process, to production of all favorable proof, to a fair trial by an impartial jury, and to

confrontation; (2) did the late disclosure of expert witnesses violate Hooper's rights to due process, to a fair opportunity to prepare for trial, to all favorable proofs, and to confrontation; (3) did the failure to suppress evidence taken from the search of his home violate Hooper's right to be free from unreasonable search and seizure; and (4) did the introduction of evidence of Hooper's stops at other houses violate the rules of evidence, due process, his right to the presumption of innocence, and his right to be proven guilty beyond a reasonable doubt.

The New Hampshire Supreme Court affirmed Hooper's conviction. The court concluded that Hooper did not present a developed argument that his rights to due process and a fair trial were violated by the trial court's limitation on cross examination of Pierce-Weeks, which precluded consideration of those issues. Exclusion of the evidence of another man's semen found through testing on the rape kit also did not violate Hooper's right, under the New Hampshire Constitution, to present all favorable proofs, because that right pertains to witnesses, not specific testimony.

The court also concluded that Pierce-Weeks's testimony that Hooper's DNA was not found in the rape kit testing results was not misleading, despite the test results showing another man's semen, because "the State clarified through its expert in sexual

assault cases that there was no evidence that the defendant had ejaculated in the victim's vagina." State v. Hooper, Case No. 2006-0708, at *1 (N.H. Oct. 19, 2007). With respect to Hooper's claim that his right to confrontation and cross examination were violated, the court noted that the right was subject to limitation to avoid questioning on improper matters. The court concluded that Hooper did not make a sufficient showing that the evidence of other semen was relevant and that its probative value overcame the prejudice to the victim under New Hampshire's rape shield law, Revised Statutes Annotated ("RSA") § 632-A:6, II.

On other issues, the supreme court held that the trial court correctly allowed the testimony of the state's expert witnesses, subject to cross examination on the factual and evidentiary bases for their opinions. The court also held that the trial court did not err in failing to suppress items found in the search of Hooper's home, under a daytime search warrant, because the search began before 9 p.m., and under Maine law, a search begun within the time allowed can extend beyond the specified time. With respect to the evidence of Hooper's stops at other houses with for sale signs, the court ruled, under New Hampshire law, that the evidence was admissible because those actions were neither prior "bad acts" nor criminal activity, there was clear proof

that the stops had occurred, and the probative value substantially outweighed any unfair prejudice.

## Discussion

In support of his habeas petition, Hooper raised four issues: that his Fifth and Sixth Amendment rights were violated by the trial court's limitation on cross examination about the presence of another man's semen; that expert witnesses were allowed to testify although the state had not complied with the requirements of Superior Court Rule 98; that the search pursuant to a daytime warrant did not comply with statutory requirements; and that evidence of Hooper's stops at other houses violated his rights to due process and a fair trial.  The Warden moves for summary judgment on the grounds that part of the cross examination issue was procedurally defaulted and the remaining parts do not support habeas relief, that the decision to admit expert testimony was based on state law and Hooper fails to show violation of a federal right, that the challenge to the evidence found during the search cannot be raised on habeas review, and that his claim challenging the evidence of his visits to other houses does not raise a federal claim.  Hooper objects to summary judgment, challenging procedural default, raising an issue of

newly discovered evidence, and arguing that his claims succeed on the merits.

"It is a fundamental principle of the law of federal habeas corpus . . . that no habeas claim is stated as to state court criminal convictions unless the alleged errors are violations of the Constitution, laws, or treaties of the United States." Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006). Therefore, to the extent Hooper brings claims based on violations of the New Hampshire Constitution, state law, and state court procedural rules, those claims do not state grounds for habeas relief.

When a state court has considered the issues raised, a writ of habeas corpus will not be granted unless the state court's adjudication of the federal claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). "'[C]learly established Federal law,'" as used in § 2254(d)(1), "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Carey v. Musladin, 549 U.S. 70, 74 (2006) (quoting § 2254(d)). The state court's factual findings

are presumed to be correct unless the petitioner can show error by clear and convincing evidence.  § 2254(e).

A.  Limitation on Cross Examination

The testing done on the rape kit results provided no physical evidence that linked Hooper to the assault on RG.  The rape kit testing did show semen from someone other than Hooper.  The defense tried unsuccessfully to cross examine the state's expert witness, Pierce-Weeks, about the semen found, arguing that the evidence showed that RG had had sex with another man, who could have been the attacker, and that the presence of semen disproved part of Pierce-Weeks's theory that the passage of time and the fact that RG had showered could explain the absence of physical evidence from Hooper.  The trial court ruled that because the state introduced evidence that Hooper had not ejaculated while raping RG vaginally, the absence of his semen was explained, without relying on the theories that the passage of time or showering obliterated physical evidence left by Hooper.

On appeal to the New Hampshire Supreme Court, Hooper stated that the trial court's decision not to allow the defense to question Pierce-Weeks about the test results, showing another man's semen, violated his rights to due process, to produce all

proofs favorable, to a fair trial, and to confrontation through cross examination.  In his brief, however, Hooper focused on the right to cross examination.  The New Hampshire Supreme Court ruled that Hooper failed to present a developed argument based on due process and a right to a fair trial, under the Fifth Amendment, and therefore, did not consider those theories.  In response to Hooper's claim that the expert's testimony was misleading, in the absence of the evidence of other semen, the court concluded that the evidence that Hooper had not ejaculated explained the lack of physical evidence.  The court also held that Hooper's right to cross examination and confrontation was not violated because the rape shield law, RSA 632-A:6, II, applied, and Hooper had not made the necessary showing to overcome the statutory protection to the victim.

   1.   Procedural Default

   "Federal habeas review of a particular claim is precluded in circumstances in which a state prisoner has defaulted on that claim in state court by virtue of an independent and adequate state procedural rule."  Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010).  To be independent, for purposes of procedural default, "the state court judgment must clearly and expressly rest on the prisoner's failure to comply with the state

procedural rule."  Pina v. Maloney, 565 F.3d 48, 52 (1st Cir. 2009) (citing Harris v. Reed, 489 U.S. 244, 266 (1989)); see also Delaney v. Bartee, 522 F.3d 100, 104 (1st Cir. 2008).  Adequacy of the state ground depends on whether the state rule is regularly and consistently enforced by the state court.  Pina, 565 F.3d at 53; see also Pike v. Guarino, 492 F.3d 61, 74 (1st Cir. 2007).  When it applies, procedural default can be surmounted only by a showing of cause for the default and actual prejudice resulting from deprivation of a constitutional right. Yeboah-Sefah v. Ficco, 556 F.3d 53, 66 (1st Cir. 2009).

 The New Hampshire Supreme Court declined to consider Hooper's claims that the trial court violated his Fifth Amendment rights to due process and a fair trial by limiting cross examination because those claims were not adequately briefed. The court cited State v. Blackmer, 149 N.H. 47, 49 (2003) in support of its decision, noting that a passing reference to a constitutional claim is deemed to be waived.  In opposing summary judgment, Hooper argues that his Fifth Amendment claims were adequately briefed and that the New Hampshire Supreme Court erroneously relied on the waiver rule.

 For purposes of the habeas petition, the court has reviewed Hooper's brief filed in support of his appeal to the New Hampshire Supreme Court.  Although the brief states the claims of

12

due process and a fair trial, under the Fifth Amendment, those claims are not developed with argument and supporting citations to authority. In contrast, Hooper's claims asserting his right to cross examination and confrontation under the Sixth Amendment was properly developed.

Therefore, the New Hampshire Supreme Court properly invoked the waiver rule as to Hooper's Fifth Amendment claims. This court has previously found that the waiver rule, applied in Blackmer, is an adequate ground for the state court's decision. Blackmer v. Warden, Civ. No. 05-cv-340-PB, 2008 WL 227267, at *8 (D.N.H. Jan. 28, 2008). Hooper has not addressed the showing of cause and prejudice necessary to overcome procedural default. Janosky, 594 F.3d at 44. The Fifth Amendment claims will not be considered.

### 2. Sixth Amendment Claims

Hooper contends that Pierce-Weeks's testimony, explaining that the lack of physical evidence from Hooper in testing of the rape kit was due to the effects of the passage of time and showering, was misleading because the other semen found in the rape kit testing was not affected by either the passage of time or showering. Hooper argues that his inability to introduce evidence of the other semen left the misleading impression that

13

the lack of his semen was explained and deprived him of a defense that the lack of such evidence proved his innocence. As is noted above, the New Hampshire Supreme Court held that Pierce-Weeks's testimony was not misleading because of the evidence that Hooper did not ejaculate, providing another explanation for the lack of his semen, and that Hooper had not overcome the protection afforded to RG by the rape shield law.

The New Hampshire Supreme Court relied entirely on state law in its decision that Hooper's right to cross examination was not violated. As a result, that court's decision was not an adjudication of the federal claim. The Warden has not addressed the standard of review under these circumstances. See Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010) (de novo review of unadjudicated claim); Zuluaga v. Spencer, 585 F.3d 27, 30 (1st Cir. 2009) (deferential review when state law is more protective than federal law).

In addition, the Warden failed to address the merits of Hooper's federal claim under either standard. Instead, the Warden argues that the supreme court made a factual finding that Pierce-Weeks's testimony was not misleading and argues that the evidence of another man's semen was irrelevant. The Warden does not provide the applicable federal standard for Confrontation Clause issues or make a persuasive argument that Hooper's federal

claim does not entitle him to relief under that standard.[2]  To the extent the Warden intended to argue that any error in limiting cross examination would be harmless, that analysis is not sufficiently developed to be persuasive.  Therefore, Hooper's Sixth Amendment confrontation claim cannot be resolved through the present motion for summary judgment.

B.  Admission of Expert Testimony

Hooper contends that the testimony of the state's expert witnesses was inadmissible because the prosecutor did not comply

---

[2]The Warden's analysis of Federal Rule of Evidence 412 is immaterial.  The appropriate standard is based on Supreme Court precedent:

The Confrontation Clause of the Sixth Amendment protects a criminal defendant's right to confront the witnesses against him through cross examination.  Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2531 (2009).  A criminal defendant's right to confrontation and to present relevant testimony is subject to reasonable limitations to prevent, "among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  Michigan v. Lucas, 500 U.S. 145, 149 (1991) (internal quotation marks omitted); see also Chambers v. Mississippi, 410 U.S. 284, 295 (1973).  In considering whether a limitation on cross examination violated the Confrontation Clause, the court balances the interests involved in the case, weighing "the importance of the evidence to an effective defense, . . . the scope of the ban involved, . . . and the strength vel non of state interests weighing against admission of the evidence."  White v. Coplan, 399 F.3d 18, 24 (1st Cir. 2005) (interpreting Supreme Court cases).

with the notice requirements of Superior Court Rule 98. He also argues that he has newly discovered evidence pertinent to the expert testimony issue. In response to the Warden's motion for summary judgment, Hooper cites the Fifth Amendment in support of his claim and states that the trial court's decision violated due process. He cites no federal cases in support of his claim. See Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Therefore, Hooper has not sufficiently developed his federal claim to permit review.[3]

Hooper also contends that he is entitled to habeas relief because he now has new evidence that undermines the expert's opinions about the fingerprint and boot print evidence. The "new evidence" that Hooper offers is an excerpt from a publication on forensic science.[4] Hooper contends that the excerpt shows that

---

[3] In addition, because there is no general constitutional right to discovery in a criminal case, to support a claim of a violation of federal law, Hooper would have to show that the delayed disclosures violated the rights recognized in Brady v. Maryland, 373 U.S. 83, 87 (1963), which he has not argued. See, e.g., United States v. DeCologero, 530 F.3d 36, 64 (1st Cir. 2008); United States v. Rivera-Hernandez, 497 F.3d 71, 79 (1st Cir. 2007).

[4] The excerpt is taken from a publication titled "Strengthening Forensic Science in the United States: A Path Forward," produced by the Committee on Identifying the Needs of the Forensic Science Community, Committee on Science, Technology, and Law Policy and Global Affairs, Committee on Applied and

the method of fingerprint and boot print analysis used by the state's expert at Hooper's trial "has been found lacking by the Academy of Sciences." The excerpt discusses "friction ridge identification" and the "ACE-V" method for analyzing fingerprints and concludes that additional research is necessary to improve the accuracy of the tests. The excerpt also discusses impression evidence, such as shoe prints, and points out challenges in making identifications based on that evidence. Hooper makes no comparison between the information in the excerpt and the testimony of the expert at his trial. Hooper's counsel states only that he had "a duty to bring this to the court's attention," and suggests that the new evidence would be a basis for a new trial. The cited legal support for his new evidence claim are New Hampshire cases which hold that newly discovered evidence may provide a basis for a new trial. Because Hooper was tried in state court, a motion for a new trial would have to be filed there.

  As the Warden points out, Hooper has not raised the new evidence claim in state court. Because that claim has not been

---

Theoretical Statistics Division on Engineering and Physical Science, and National Research Council of the National Academies, and published by The National Academies Press. The excerpt provided by Hooper addresses collection and analysis of latent prints.

exhausted and provides no basis for habeas relief, it is not considered here.  See § 2254(b).

C.  Denial of Motion to Suppress

Hooper did not offer additional briefing on his claim challenging the search of his house, for purposes of summary judgment, and instead relied on the briefing provided in his petition.  In his petition, Hooper states that the state failed to comply with the statutory requirements for obtaining and executing a search warrant under New Hampshire and Maine law.  As is noted above, however, state law is not a cognizable basis for habeas relief.

To the extent Hooper intended to raise a Fourth Amendment claim, that too fails.  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 482 (1976).  The trial court held a hearing on Hooper's motion to suppress the evidence and concluded that the evidence was admissible because the search began within the time allowed by the warrant.  The New Hampshire Supreme Court heard the claim and affirmed.  Therefore,

the claim is precluded under the rule announced in Stone v. Powell.

D. Evidence of Stops at Other Houses

Hooper does not clearly raise a federal basis for his claim that the evidence of his stops at other houses with for sale signs, before the attack on RG, was inadmissible. To the extent he argues that the evidence of his stops at other houses constituted evidence of prior bad acts that violated his right to due process, his claim fails. The New Hampshire Supreme Court correctly held that Hooper's stops at two houses with for sale signs before he stopped at RG's house did not involve bad acts because at the first two houses he merely inquired about the house for sale and no criminal conduct occurred. In addition, while it might be possible to show that admission of prior bad act evidence violated due process, this is not the rare case that presents extreme facts which might satisfy that standard. See Kater v. Maloney, 459 F.3d 56, 64 (1st Cir. 2006).

## Conclusion

For the foregoing reasons, the Warden's motion for summary judgment (document no. 11) is granted as to the petitioner's claims except for his claim that the limitations imposed on cross

examination violated his rights under the Confrontation Clause of the Sixth Amendment.

The Warden shall file a motion for summary judgment addressing the remaining claim **on or before April 21, 2010.** Hooper, who is now proceeding pro se, will have until **May 21, 2010**, to file a response to the Warden's motion.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

March 23, 2010

cc: Oliver Hooper, #78519, pro se
Elizabeth C. Woodcock, Esquire