UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Oliver Hooper


        v.                          Civil No. 08-cv-426-JD
                                    Opinion No. 2010 DNH 101

Warden, Northern New Hampshire
Correctional Facility


                        O R D E R

     Oliver Hooper seeks habeas corpus relief, pursuant to 28

U.S.C. § 2254, from his state convictions and sentences for

aggravated felonious sexual assault, simple assault, criminal

threatening, sexual assault, and kidnaping.  The court previously

granted summary judgment in the Warden's favor on Hooper's claims

except for his claim that the state court imposed limitations on

cross examination during his criminal trial that violated his

right to confrontation under the Sixth Amendment.  The Warden now

moves for summary judgment on that claim.


                    Standard of Review

     Summary judgment is commonly used in habeas corpus

proceedings to determine whether the issues raised may be decided

based on the record, within the procedural confines of § 2254.

See Fed. R. Civ. P. 81(a)(4); Rule 12, Rules Governing § 2254

Proceedings.  Ordinarily, summary judgment is appropriate when
"the pleadings, the discovery and disclosure materials on file,
and any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  The party seeking
summary judgment must first demonstrate the absence of a genuine
issue of material fact in the record.  See Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly
supported motion for summary judgment must present competent
evidence of record that shows a genuine issue for trial.  See
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### Background[1]

On the morning of July 26, 2005, Hooper was driving in a
neighborhood of Dover, New Hampshire, where he stopped at several
houses with for sale signs.  At the third house, a young woman,
RG, was home alone and answered the door.  After a conversation
about the house being for sale, Hooper grabbed RG by the arm,
pushed her back into the house, and forced her to go upstairs.
Once they were in a bedroom, Hooper tied up RG, took her clothes
and his own clothes off, threatened her with a knife, and forced

---

[1]Additional background information is provided in the
court's previous order issued on March 23, 2010.

2

her to perform oral sex.  Hooper then also raped RG vaginally but told her that because she was not using birth control, he would not ejaculate.  He forced RG to take a shower and then forced her down to the basement where he left her naked and bound.  After he left, RG managed to get upstairs where she called her mother and the police.

RG was examined at the Wentworth-Douglass Hospital emergency department.  The examination included administration of a sexual assault kit.  The police investigation led them to Hooper.

Hooper was charged with five counts of aggravated felonious sexual assault, two counts of simple assault, two counts of criminal threatening, one count of sexual assault, and one count of kidnaping.  At trial, RG testified about the rape, including the detail that Hooper had ejaculated while she was being forced to perform oral sex but not while he was raping her vaginally. The prosecution called three witnesses to testify about the results of the sexual assault kit ("rape kit") administered to RG after the assault.  Sara Taylor, the nurse who administered the rape kit; Mary Dawson, a criminalist with the state police forensic laboratory who processed the rape kit, and Jennifer Pierce-Weeks, the director of the Sexual Assault Nurse Examiner Program, testified about the results of RG's examination and testing.

Pierce-Weeks testified that examination and testing showed an absence of Hooper's DNA in the victim's mouth and vagina and no trauma to her vagina.  In response to questions by the prosecutor, Pierce-Weeks also testified that the passage of time and the fact that RG had been forced to shower could explain the absence of Hooper's DNA in the rape kit.  The defense argued that the prosecutor's questioning and Pierce-Weeks's testimony opened the door to ask Pierce-Weeks about evidence that semen from someone other than Hooper was found through testing the rape kit. The court did not allow Hooper's counsel to question Pierce-Weeks about the other semen found through testing the rape kit.

On appeal, Hooper argued that the limitations imposed by the trial court on cross-examination of Pierce-Weeks, which prevented questions about the presence of another man's semen in the rape kit, violated his right to confrontation under the federal and state constitutions.  The New Hampshire Supreme Court concluded that because evidence of consensual sexual relations is inadmissible except when a defendant can show that the evidence is relevant and that its probative value outweighs its prejudicial effects under New Hampshire's Rape Shield Law, RSA 632-A:6, II, the evidence of other semen was properly excluded. The supreme court reasoned that because the evidence showed that Hooper had not ejaculated into RG's vagina, Hooper had not met

4

his burden to show that the evidence of other semen was relevant and more probative than prejudicial.

In response to the Warden's prior motion for summary judgment, the court concluded that Hooper had procedurally defaulted some of his claims and that he could not show that the New Hampshire Supreme Court's decision on other claims was either contrary to or an unreasonable application of federal law.  The order on summary judgment did not resolve Hooper's confrontation claim because the Warden argued only that the claim was procedurally defaulted, which it was not, and did not address the claim on the merits under the applicable standard of review.  The Warden now moves for summary judgment on Hooper's confrontation claim.

## Discussion

For purposes of the present motion, the Warden states that the court previously concluded that the state court did not reach the federal claim.  Based on that interpretation of the court's prior order, the Warden asserts that the de novo standard of review applies.  The Warden misinterprets the court's previous

order.[2]  Because the Warden proceeds under the de novo standard,

however, that is the standard the court will apply.

Under the de novo standard, the deference accorded a state

court's decision under 2254(d) does not apply.  See, e.g., Gray

v. Brady, 592 F.3d 296, 302 (1st Cir. 2010).  When § 2254(d) does

not apply, a habeas petitioner must show "that he is in custody

in violation of the Constitution or laws or treaties of the

United States."  § 2254(a); see also Berghuis v. Thompkins, ---

S. Ct. ---, 2010 WL 2160784, at *14 (June 1, 2010).

The Warden raises several grounds in support of summary

judgment on Hooper's confrontation claim.  He contends that the

_____

[2] The court stated:

The New Hampshire Supreme Court relied entirely on
state law in its decision that Hooper's right to cross
examination was not violated.  As a result, that
court's decision was not an adjudication of the federal
claim.  The Warden has not addressed the standard of
review under these circumstances.  See Clements v.
Clarke, 592 F.3d 45, 52 (1st Cir. 2010) (de novo review
of unadjudicated claim); Zuluaga v. Spencer, 585 F.3d
27, 30 (1st Cir. 2009) (deferential review when state
law is more protective than federal law).

Order, Dkt. no. 40, at page 14.  Although the New Hampshire
Supreme Court's decision did not expressly adjudicate the federal
claim, the decision would be entitled to the deferential standard
for habeas review if the federal Confrontation Clause provided no
greater protection than state law.  See Gray v. Brady, 592 F.3d
296, 302 (1st Cir. 2010); Zuluaga, 585 F.3d at 30; see also State
v. Coombs, 149 N.H. 319, 320 (2003).

New Hampshire Supreme Court's decision is supported by certain
federal evidentiary rules, that Hooper failed to preserve his
objection in the trial court to the limitation on cross-
examination, that the restriction on cross-examination was
appropriate under the circumstances, and that any error was
harmless.  Hooper objects to summary judgment.


A.  <u>Federal Rules of Evidence</u>

     Although the court ruled in the prior order that Federal
Rule of Evidence 412 was immaterial to Hooper's confrontation
issue and that the Warden's reliance on Rule 412 was misplaced,
the Warden again asserts that Rule 412, along with Rule 403, show
that the evidence of other semen was properly excluded.  Hooper
does not contend that the limitation imposed on his counsel's
cross-examination of Pierce-Weeks violated evidentiary rules.
Instead, Hooper argues that the trial court's limitation,
precluding questions about the other semen found in the rape kit,
violated his Sixth Amendment right to confrontation.  For a
second time, the Warden's analysis of federal evidentiary rules
is immaterial and misses the mark.

7

B.  Procedural Default

      The court previously ruled that Hooper did not procedurally
default his confrontation claim.  Now, the Warden argues that the
claim was not preserved during trial because Hooper's counsel did
not attempt to ask the precise questions he raises in his
petition in support of habeas relief.  The Warden's argument
lacks merit.

      It appears that the Warden is now arguing that the New
Hampshire Supreme Court should not have considered the
confrontation claim because it was not preserved below.  While
that argument might have been made to the New Hampshire Supreme
Court on direct appeal, it is inapposite here.  The New Hampshire
Supreme Court did consider the claim on the merits, and
therefore, the issue of whether the claim was properly preserved
during trial is immaterial.  Cf. Lynch v. Ficco, 438 F.3d 35, 45-
46 (1st Cir. 2006) (discussing proof of cause and prejudice to
overcome procedural default).


C.  Limitation on Cross-Examination

      The Confrontation Clause of the Sixth Amendment protects a
criminal defendant's right to confront the witnesses against him
through cross-examination.  Melendez-Diaz v. Massachusetts, 129
S. Ct. 2527, 2531 (2009).  A criminal defendant's right to

confrontation and to present relevant testimony is subject to reasonable limitations to prevent, "among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Michigan v. Lucas, 500 U.S. 145, 149 (1991) (internal quotation marks omitted); see also Chambers v. Mississippi, 410 U.S. 284, 295 (1973); United States v. St. Pierre, 599 F.3d 19, 23 (1st Cir. 2010).

At trial, the state presented no physical evidence that RG had been assaulted.  That is, there was no DNA evidence from Hooper, no vaginal bruising or tearing, and no evidence of other physical harm to RG.  The defense theory at trial was that Hooper did not assault RG.  The defense contended that contrary to RG's testimony, Hooper went to RG's house, talked to her in the front hallway, and then left.  The defense further contended that the lack of physical evidence of an assault showed that Hooper had not assaulted RG.

The state called Pierce-Weeks as an expert witness to testify about the results of the rape kit testing and the examination of RG following the assault.  Pierce-Weeks reviewed RG's medical records, including the rape kit, from RG's examination at the emergency department following the assault. Pierce-Weeks acknowledged that no DNA from Hooper had been

9

recovered.  The prosecutor asked Pierce-Weeks what effect showering would have on finding DNA, and she responded that showering and bathing can wash away DNA, which makes it less likely that DNA will be recovered.  Pierce-Weeks also testified that DNA degrades more quickly in the mouth than on other parts of the body, making it less likely that DNA would be recovered following ejaculation into the mouth.

The prosecutor began to ask Pierce-Weeks about the effect of the passage of time, when defense counsel objected to the question.  Defense counsel argued that the question was beyond the scope of Pierce-Weeks's expert report, and the court sustained the objection.  The prosecutor then asked Pierce-Weeks about trauma caused by digital penetration of the vagina, and defense counsel objected.  Defense counsel again argued that the question went beyond the scope of Pierce-Weeks's expert disclosure.  The court sustained the objection.

After the bench conference, the prosecutor asked Pierce-Weeks why DNA was not found in RG's vagina.  Pierce-Weeks responded that there were several reasons:  "The first is, there was no ejaculation into the vaginal cavity, as I understand it. The second is, she was made to shower following the sexual assault.  And another would be the time that has elapsed from the

10

initial assault to the exam.  Those three things are three of the
biggest factors, I would say."  Trans. III, at 73.

Defense counsel asked to approach the bench.  Defense
counsel objected to the question based on the scope of the expert
disclosure.  Defense counsel then argued that by asking Pierce-
Weeks about the absence of DNA and eliciting Pierce-Weeks's
answer that showering and the passage of time would remove DNA,
the state had opened the door to allow the defense to introduce
evidence that semen from another man had been found in the rape
kit testing.  Defense counsel argued that because semen was
found, which was the result of RG's sexual activity with someone
else several hours before the assault, Pierce-Weeks's testimony
about the effects of showering and time was misleading.  In other
words, the absence of Hooper's semen could not be explained by
showering or the passage of time.

The court disagreed with defense counsel's assessment of the
evidence and Pierce-Weeks's testimony.  The court emphasized that
the evidence was that Hooper had not ejaculated into RG's vagina
so that no basis existed in the case to find his semen there.
The court directed the prosecutor to reiterate the fact that
Hooper had not ejaculated into RG's vagina and allowed the
questioning to continue.  The prosecutor then asked Pierce-Weeks

whether it was very clear that Hooper had not ejaculated into
RG's vagina, and Pierce-Weeks agreed.

Reasonable limits on cross-examination do not violate the
Confrontation Clause of the Sixth Amendment.  United States v.
Ofray-Campos, 534 F.3d 1, 36 (1st Cir. 2008).  In considering
whether a limitation on cross-examination violated the
Confrontation Clause, the court balances the interests involved
in the case, weighing "the importance of the evidence to an
effective defense, . . . the scope of the ban involved, . . . and
the strength vel non of state interests weighing against
admission of the evidence."  White v. Coplan, 399 F.3d 18, 24
(1st Cir. 2005) (interpreting Supreme Court cases).

In this case, the defense sought to introduce evidence that
RG had engaged in sexual relations with another man just hours
before her encounter with Hooper.  The defense argued that
evidence of the other man's semen found through the rape kit
showed that Pierce-Weeks's opinions that showering and the
passage of time explained the absence of Hooper's semen were
wrong.[3]  Instead, the defense argued, the absence of Hooper's
semen was proof that no assault occurred.

---

[3]The defense did not argue that evidence of RG's prior
sexual activity gave her a motive to falsely accuse Hooper of
assault.

The state had a justifiable interest in protecting RG from disclosure of her prior sexual activity.  See, e.g., Lucas, 500 U.S. at 149-50.  To constitute a Sixth Amendment violation, therefore, the excluded evidence must be sufficiently probative to outweigh the state's interest.  White, 399 F.3d at 24.

The issue of the effect of showering and the passage of time on finding DNA evidence pertained to the validity of Pierce-Weeks's opinions.  Although the presence of another man's semen undermined Pierce-Weeks's opinions about the effects of showering and time, the more important reason she gave for the absence of Hooper's semen was lack of ejaculation.  If, as the evidence showed and Pierce-Weeks testified, no ejaculation occurred, there would be no semen to find, regardless of showering or the passage of time.  Pierce-Weeks's testimony that showering and the passage of time could explain the absence of Hooper's semen was inconsistent with her first reason, which was that Hooper had not ejaculated.  As required by the trial court, the state emphasized the lack of ejaculation as the reason that Hooper's DNA was not found.

The defense argued that the evidence of other semen was relevant to challenge Pierce-Weeks's opinions about the effects of showering and time.  Those opinions, however, held little weight in the context of Pierce-Weeks's testimony, taken in its

13

entirety.   Therefore, the probative value of the excluded evidence was not significant.   Under the particular circumstances of Hooper's case, the trial court's limitation on cross-examination of Pierce-Weeks, which precluded the evidence of another man's semen, did not violate Hooper's Sixth Amendment right to confront the witnesses against him.

Conclusion

For the foregoing reasons, the Warden's motion for summary judgment (document no. 41) is granted.   Summary judgment was previously granted on Hooper's other claims (document no. 40). Therefore, the petition for a writ of habeas corpus (document no. 1) is denied.

Hooper may move for a certificate of appealability under 28 U.S.C. § 2253(c), with a supporting memorandum, **on or before June**

**24, 2010.**  The Warden shall file a response **within ten days after the date the motion is filed.**  <u>See</u> Rule 11, Rules Governing § 2254 Cases.

        SO ORDERED.

                                    _____
                                    Joseph A. DiClerico, Jr.
                                    United States District Judge

June 9, 2010

cc:  Oliver Hooper #78519, pro se
     Elizabeth C. Woodcock, Esquire

15